May it please the court, counsel. Good morning, your honors. My name is David Mullen, and I was appointed to represent Derrick Stewart. My appointment came just after he had initially signed and pled guilty. I was not counsel for purposes of the suppression hearing, but I've been his attorney since. The issue here is whether there is a substantial basis for the issuance of the warrant based on probable cause, or if you will, whether the absence of drug evidence is evidence of the presence of such drug evidence. Can I just . . . does the record include a transcript of the suppression hearing? Because the trial court . . . when I went to find the trial court's reasoning, the only document in the addendum is for reasons stated on the record at the hearing, so I don't have that. Is it part of the record on appeal? I believe it's part of the record on appeal. There was a transcript. I read the transcript in preparation for this. I assumed it was sent up to the . . . It would have been helpful if the government had put it as an addendum to the red brief. Your honor, I have a copy if the court wants one. Oh, we'll find it. We'll find it. You're doing 26 sets of briefs, one after another, and the more that's at hand, the better. Sure, sure. But it's not . . . I realize. I just wanted to know. There was no evidence taken at that suppression hearing. It was just based on, I guess, the four corners of the search warrant documents. The judge made the ruling that it did and filed that one-page summary of its ruling. This warrant was issued in March of 2017 out of a Scott County state court judge. There were two kinds of information, two categories of information contained in the affidavit. One was informants, and the other was law enforcement observations. Turning first to the informant evidence, unusual in my experience. I don't review as many search warrants as your honors do, but there was an absolute absence of any credibility of vermin in the affidavit. Nowhere does it say that this person was a reliable informant or the reliability was based on previous use of this informant. That contrasts with . . . If I parse out the briefs, though, it seems there were two reports. The first came from the Department of Human Services, DHS, a worker, an employee, reporting of . . . giving a report of regulatory activity. Now, the second one was a report, again, from a DHS employee saying a concerned citizen had said this, that, and the other, and I thought the affidavit said that the affiant then went and interviewed the . . . talked to the concerned citizen. That's my reading as well. That's corroboration. That is not a statement of reliability, though. All the officer did was talk to . . . My point is there ought to be case law that talks about whether information from a governmental agent has an inherent reliability, in part because there is no reason for the government reporting an intergovernmental report of activity to be unreliable. But the agency was not stating that there was heroin and a firearm inside the bedroom inside that house. That information came from the DHS concerned citizen, which is a citizen and not an employee of DHS, as I read it. So, Your Honor is correct. There were two DHS individuals and then just a citizen. The first one is contributing probable cause of relevant information. Sure, it's not as specific as there's a gun and drugs in there now. As the brief points out, Your Honor, there's no indication what level. Was this a case worker at the DHS? Was this a support staff at the DHS? There's no indication. It's just that I spoke to someone who works at DHS. Why does it matter? Reliability just means you're not making it up or lying about it. First-hand knowledge is more credible, more reliable than reporting what some other person said. And is it a person who's reporting what someone else said, a person who typically relies on that because they're like a case worker at DHS, or were they just a support staff who knew the person from the community, knew the cop, and therefore called the cop? Your argument is, you know, it's the anonymous tip argument. And my point is, I don't think this is anonymous tip at all. The source is another regulatory agency. The specific source is not disclosed, but a reviewing magistrate judge, I don't think . . . The officer obviously thought that just hearing from someone who was employed by the state was insufficient. The officer went to go and investigate. What they failed to do . . . First tip. Well, the first tip was just a general . . . he's just . . . he's selling heroin. It was just a very broad statement. It said that a daughter had used . . . they thought the daughter resided in the house. That's contradicted . . . I don't want to . . . Sure. You have a case that talks about reliability of information received from another governmental source, as whether that has the same concerns as the anonymous tip in a drug case. Again, without more information in the affidavit or statements by the officer to the issuing judge, it's . . . we're speculating. We're speculating. What's not there is . . . that's apparent from the face of the affidavit. To add to that, the issuing judge had three, possibly four, opportunities in the endorsement to say whether the information provided to law enforcement was credible and could have added additional evidence given by the aid . . . the officer to the officer at the time it was presented to the judge or there was three blanks for the judge to fill out saying, this is credible because this was a or for information that's in the affidavit, I find this to be believable or it's credible because of other information which I'm going to put here. The judge left those blanks. We submit that informants are either reliable or they're not and not having been found to be reliable, we're left with the fact . . . and it could be found that they're just anonymous. We don't even know who they are, which you look to see if there are other points that corroborate. If there's corroboration, that increases the reliability of . . . it could be a note under the door. The question is, you take it as a whole. You say, it's probable cause here. This magistrate, this judge did that, looked at it, said this works and then they go out and they execute on the warrant. Now, the question really is, does in good day, the judge said, I don't really care, it hasn't really been argued here, but even . . . I think all the pieces fit because in the transcript, she doesn't go through and make all the findings point by point by point. She just says, well, in the first one, you have these facts and you have . . . without stating what the facts are and there are other facts secondarily and you pull them all together and I think that's probable cause. But even if there's not probable cause, it's protected by Leon and the good faith exception. Why was she wrong on that point? Your Honor has several points there that I need to respond to. Number one, whenever the government or the reviewing court reaches in their quiver and pulls out totality, I take that as a somewhat moral victory because it's acknowledgement that no one thing in the affidavit arises to level of probable cause. So now you're having to total things up. Well, if the information . . . there's no credibility determination or finding or representation even as to that's a zero. So it doesn't really add to the totality. So what you're left with is what the law enforcement observations are, their evidence, which is a nine-year-old conviction, name came up in a prior investigation. Oh, and he left the house twice that morning. Again, we're looking at search warrant for the house. We don't have any evidence that there was traffic to the house. We have the individual leaving the house twice, goes and meets, no drugs are observed transferring hands. They actually look and search one of the people at the meeting and they found no drugs. There is a radio transmission from a fellow officer that says, I saw another type, another one of those kind of things. Again, no detail about whether they actually saw drugs, what kind of drugs are being transferred, whether money was exchanged for it. They're very, very conclusory. And so adding something, adding zero to something doesn't make something any larger than it is. Thank you. Thank you. Thank you, Counsel. Ms. Glasgow. Thank you, Your Honor. May it please the court. Counsel. My name is Andrea Glasgow. I'm assistant United States attorney in the Southern District of Iowa, representing the United States in today's oral argument. This court should affirm the district court's ruling denying Mr Stewart's motion to suppress because there was a substantial basis from which the reviewing magistrate could determine that there was probable cause. This is the case of an officer doing exactly what we ask an officer to do to effectuate a lawful search. In this case, Deputy Furlong received information that Mr Stewart was involved with drugs. He investigated that information. He followed up with the source of that information. He and fellow officers went out, made their own observations. He drafted a warrant. He had that warrant reviewed by a state prosecutor. He then took that warrant to a state court judge and the warrant was signed. Officers then executed that warrant in a good faith reliance on the magistrate's determination of probable cause. On March 2nd, 2017, Deputy Furlong drafted the warrant, putting in his years of experience, the information and experience that he has specific to drug trafficking, and the common practices of those involved in drug trafficking. He put in information that he had from prior investigations, including Mr Stewart being previously named as a source of heroin in a prior investigation. He just a short period of time before this March 2nd search warrant. At that time, Mr Stewart's daughter, who lived at his residence, had overdosed on heroin. She had a child who had tested positive for opiates. According to that DHS investigation, we then had the DHS information from March 2nd, wherein we had a source of information that again, Mr Stewart is involved in the distribution of heroin. Deputy Furlong followed up with that source, and I think to go to one of the points part of what we need to consider here and how this is different than an anonymous source case, is one of the concerns there is the ability to hold people accountable for their statements. That if someone is just truly making this up, if we know who this is, they can be held accountable for that. And in this case, Deputy Furlong had the ability to contact this person and did in fact have contact with this person. So the concern that someone is wholly making it up without any ability to hold them responsible for that is not a concern. Deputy Furlong and fellow officers then went out, made observations of Mr. Stewart. They observed him to meet with someone known to be involved in heroin distribution, who was on probation for state heroin charges. That individual then met with another, excuse me, that person was on federal supervision. That person then met with another individual known to be involved in heroin distribution and use, who was on state probation for heroin charges. When officers approached that individual, that individual had in hand heroin paraphernalia, including a syringe. Officers then follow Mr. Stewart back to his house. At a short time, he leaves the house, go engage in what officers appear to be another heroin distribution activity or some kind of controlled distribution activity. He then goes to another house in Rock Island, is in that house for only moments, exits that house again. To officers trained in law enforcement who have experience in narcotics distribution, this activity was significant. I recognize that the transcript was not provided and I apologize for any part we played in that, but I think Judge Rose said it well in her transcript. In the transcript, she said, a judge was entitled to read the information about the short-term trafficking and what's going on based upon what she understands and knows of the drug trafficking world. There is significance in that kind of traffic and anyone who's been at all involved in investigating, prosecuting, trying cases, defending cases involved in drug trafficking knows that there is significant in that kind of short-term trafficking. And then she goes on and page 22 there to go ahead and then say that, but you still have to pull it all together. So she's, and he's saying, the counsel for the defendant is saying that we are adding zero to something and that therefore it's nothing more than what it originally started out as. And I'm sure you don't agree with that and so why is he wrong? Well, the case law has established that the totality of the circumstances is how you review a search warrant. We don't go paragraph by paragraph and ask, does this paragraph alone have probable cause? Does this paragraph alone have probable cause? And so when you have the piling on of additional information, which is consistent with other information received, that does start to build. So while information in itself might not form probable cause, which would be part of why Detective Furlong did not seek a warrant in February, he's not seeking it solely based on one source. But at the time, at the point of March 2nd, 2017, when you have more and more information you have officers' observations, you receive this information prior to investigation, you observe them meeting with two individuals involved with heroin, one of which then is immediately found with heroin paraphernalia in a syringe, which would be heroin paraphernalia, in his hands at the time that officers confront him, that then amounts to significantly more than if you just think about one thing over here and one thing over there. But that's how a reviewing court looks at a warrant as a whole. And just as my experience is on the trial bench, I mean the reality of that if in fact a person is a dealer in street quantities of heroin, the fact that someone's not found in possession of the actual heroin but simply the paraphernalia, does that surprise you or does that surprise an officer in this officer's position? No, and I think taking a look at that evidence in the lens of law enforcement experience, which is what the officer and the reviewing magistrate is allowed to do, that makes complete sense. An amount of heroin that a user would typically use is very small. Heroin users do not go to Costco and buy large quantities because they use to the extent that they have. So whatever they have, they immediately use. Heroin is very addictive drug. So for an officer who knows these things, when he finds a syringe in heroin paraphernalia, to him that's indicative of heroin possession whether or not the actual heroin is found. Yeah, because in fact many addicts purchase heroin when they're quote heroin sick, right? When they're coming down and they're in desperate need. And so what do they do? They use when? Immediately. I can't remember, your brief may have said something about this. Is there anything in the record about the use of this abstract of testimony section and in the warrant application of standard, I guess standard in Iowa state practice? Is it unusual? Do we know one way or another for that not to be filled out? I don't think the record contains information on the ordinary practice in the state of Iowa. I will say... Or any state court decisions about the significance of it being blank. Yes, I don't I don't think the record contains information on the practice and I don't know that there's any case law on point. I think that to go to Mr. Mullin's point that there was no veracity finding or truthfulness finding or reliability finding, the judge did make a liability finding. This goes back to Illinois v. Gates, which I'm talking even the magistrate judge. The finding of probable cause had inherent in it a finding of reliability because reliability goes to probable cause. I mean it could have been based entirely on the on the the pursuit by the officers that day. Sure. So I don't think the absence of a specific finding as to the as to the DHS informant, tipster, I don't think that's fatal but I don't know whether Iowa courts might see it differently. There would be a problem with the nexus to the residence if all you have is the following though, isn't there? Well I think the officers observed them coming and going from that residence so I think that in fact ties them to the residence as well. As well as the heroin overdose in February was tied to that residence as well. So again looking at the totality of the circumstances, which is in fact the standard, it's not the government conceding anything, that's the standard of review for a search warrant is the totality of the circumstances. Looking at the totality of the circumstances and viewing this information through a lens of common sense with the understanding of the implications and information that officers had based upon their training and experience of narcotics enforcement, there certainly was a substantial basis from which the reviewing court could find probable cause and that great deference. If this court determines for whatever reason that there wasn't sufficient probable cause, then you're correct. The search is entitled to the good faith exception outlined under Leon. There are only three ways in which the good faith exception would not apply. The first that there was any sort of false or reckless disregard for the truth. There's been no allegation about that and there's no support for that in the record. The second being rupper stamping that the judge had disregarded her judicial role. Again there's no support for that allegation in the record. The third being that the warrant was so lacking that the officer was not reasonably relying on it when he executed it. And again in this case I don't think that that could be applicable. In this case the warrant was reviewed by a state court prosecutor, a state court judge, and then ultimately upheld by the district court judge. We can't say that an officer is in a better position to determine probable cause than two judges and a prosecutor, excuse me, two judges and a prosecutor. So in this case the warrant, the officer had no reason to suspect that this warrant was in good faith and should be upheld. There are no other questions. I'll yield the rest of my time. Was there a request for a Franks hearing? I didn't see that. No I don't believe so your honor. I don't believe there's any support or allegation in the record to suggest that there's any reason to believe there was false or misleading. I mean the brief argues that the affidavit was so reckless that I think that shouldn't apply and the citation is to Franks which of course usually triggers a request for a hearing but that it's still authority for what what it's cited. Yeah I think that that was thrown in in the appellate brief. I don't believe that there was any mention of that in the record and there certainly was not a request for a Franks hearing. Well but Leon was clear it was district court clearly thought Leon was an issue. Correct. Thank you. I'll give you a minute for rebuttal. I neglected to answer your honor's question about Leon. I apologize. The issue here is whether or not the warrant application papers were facially deficient. There were blanks in there. Credibility determinations were not made. That's unusual in our experience. One case cited by the government, the Terrence Goodson case in their brief, I argued that 20 years ago unsuccessfully. In that case you know the officer puts in there that this informant had been used for 40 arrests, used over seven years. It's just absent in this case. When you add to that the judge making no determination of credibility, that's why I get to the point that nothing should be . . . Counsel? Sure. Didn't the state court judge in fact make those decisions leaving those things blank? But he signed his name to them. Yes and so basically says I'm three of the endorsement applies specifically to informant information left that blank so we're left to read the mean that the informants were not credible so they were just left with the other information provided by law enforcement and the question is whether no traffic activity at the house sought to be searched just the individual leaving the house twice in a morning is that rise to the level does that tip the scales enough from just a substantial basis for issuance of the warrant yes and no I mean typically reliable but all they're doing is there's nothing in there that they did the investigation found this information out they're just reporting what they heard they're just a conduit and so we're not we're not question we're not question yes yes there was no information that the DHS officer knew there were drugs in the household all they said was the DHS worker said is that they sell heroin and their daughter tested positive and had a daughter who tested positive for opiates which in the precinct report indicates the first report the seventeen-year-old daughter lived at his residence survived a daughter had a child who tested positive for opiates and furlough and and then that's the first that's the first and that that that is that issue because in the pre-sentence report in the pre-sentence ongoing ongoing investigation and regulation by another government agency yes but in the pre-sentence report it is disputed whether that daughter was riding at that household or paragraph eight of the pre-sentence report or is residing with their biological mother the daughter so there's no nothing from DHS that said it was at that house officers furloughing didn't I have the benefit of a full probation office investigation they didn't it's correct they never verified whether the daughter was actually living at the residence where the search warrant was obtained for that's true thank you to the case has been thoroughly helpfully briefed and argued and we'll take it under advisement does that complete the morning's arguments court will be in recess till 830 tomorrow morning